OPINION OF THE COURT
HARDIMAN, Circuit Judge.
Xiao Xia Chen seeks review of the order of the Board of Immigration Appeals (BIA) denying her motion to reopen her deportation proceeding. We will deny Chen’s petition for review.
I.
A.
Because we write for the parties, we recount only the facts and procedural history necessary to our decision. Chen arrived in the United States on December 7, 2000. She subsequently applied for asylum, withholding of removal, and relief under the Convention Against Torture, claiming that she would be persecuted in China because she refused to marry the son of the village chief. On December 12, 2002, the Immigration Judge denied Chen’s application and entered an order of removal and the Board of Immigration Appeals affirmed. Nevertheless, Chen remained in the United States, married, and gave birth to a son on April 4, 2006, and a daughter on June 20, 2007.
On May 16, 2007, Chen filed a motion to reopen the removal proceedings, arguing that conditions had changed in China. Specifically, Chen asserted that Fujian province has increased its enforcement of China’s Population and Family Planning Laws such that the birth of her two children placed her at risk of being subjected to forced sterilization or abortion upon her return to China. In support of her motion to reopen, Chen submitted several documents we list in the margin.[1]
*733 The BIA denied the motion to reopen on August 31, 2007. In reviewing the materials Chen submitted, the BIA observed that many of the documents provided only general background regarding China’s human rights record and its enforcement of population control policies. The BIA also noted that a number of the documents in the record pre-dated 2005, the year in which Chen claimed that Fujian began escalating its enforcement of the Family Planning Law. Furthermore, the BIA held that the affidavits submitted by Chen and her father were insufficient to create a reasonable likelihood that Chen could objectively prove the basis of her fear of persecution upon returning to China. Although the affidavits recount two incidents of forced sterilization and abortion against women in Fujian province who had at least one child, there was no indication that the two women were similarly situated to Chen, ie., repatriated Chinese nationals who bore multiple children in the United States.
The BIA also disregarded some of Chen’s supporting materials. First, the BIA noted that although Chen referenced the 2005 and 2006 State Department Reports on China by citing them internet domain, she never made them part of the record, so the BIA did not rely upon them. Second, the BIA questioned the authenticity of two of the documents Chen proffered in support of her claim that U.S.-born children are counted against returning Chinese nationals for purposes of the Family Planning Laws. The BIA observed that the Chinese version of the Response of the Administrative Office— purportedly dated 2006 — contained multiple date stamps on the bottom of the document which pre-dated 2006. Also, some of the answers in the Changle City Family Q & A Handbook had inconsistent font and typeface, calling the validity of that document into question. Therefore, the BIA refused to rely on these two documents.[2]
Based on its review of the record, the BIA concluded that Chen failed to overcome the heavy burden of proof required to grant an untimely motion to reopen, and denied the motion as time-barred. The BIA also concluded that the evidence was insufficient to establish a prima facie case of eligibility for asylum because it did not establish a reasonable likelihood that Chen would be able to provide proof in a reopened proceeding of the objective basis for her fear of persecution upon returning to China. Chen filed a timely petition for review of the BIA’s decision.[3]
II.
Motions to reopen are disfavored as a matter of law and an alien who seeks to reopen bears a “heavy burden.” INS v. Abudu, 485 U.S. 94, 110, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988); see also INS v. Doherty, 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992). We review the BIA’s denial of a motion to reopen for abuse of discretion and “will not disturb the BIA’s decisions unless they are found to be arbitrary, irrational, or contrary to law.” Zheng v. Attorney General, 549 F.3d 260, 264-65 (3d Cir.2008) (internal citation omitted). Applying this “deferential standard of review, we uphold the BIA’s factual determinations if they are ‘supported by reasonable, substantial, and probative evidence on the record considered as a whole.’ ” Liu v. Attorney General, 555 F.3d 145, 148 (3d Cir.2009) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)).
*734 A.
An alien may file only one motion to reopen removal proceedings, “and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened.” 8 C.F.R. § 1003.2(c)(2). The 90-day limitation does not apply to a motion to reopen which seeks asylum or withholding of deportation “based on changed circumstances arising in the country of nationality ... if such evidence is material and was not available and could not have been discovered or presented at the previous hearing.” 8 C.F.R. § 1003.2(c)(3)(h). The Supreme Court has set forth three bases on which the BIA can deny a motion to reopen: (1) the alien failed to establish a prima facie case for the relief sought; (2) the alien failed to introduce previously unavailable, material evidence that justifies reopening under the regulation; or (3) in cases where relief is discretionary, the alien would not be entitled to the discretionary relief even if a prima facie case were shown. Sevoian v. Ashcroft, 290 F.3d 166, 169-70 (3d Cir.2002) (citing Abudu, 485 U.S. at 105, 108 S.Ct. 904).
In addition to satisfying the 90-day filing requirement, or the “changed circumstances” exception, a motion to reopen must establish prima facie eligibility for asylum. Guo v. Ashcroft, 386 F.3d 556, 563 (3d Cir.2004) (citation omitted). To qualify for asylum, an applicant must establish that she has a well-founded fear of persecution if removed to her home country. 8 U.S.C. §§ 1101(a)(42), 1158(b). To establish a well-founded fear, the applicant must show: (1) a subjective fear of persecution, (2) that is objectively reasonable. Guo, 386 F.3d at 564. “An applicant bears the burden of proving eligibility for asylum based on specific facts and credible testimony.” Zheng, 549 F.3d at 266 (citations omitted).
B.
As a preliminary matter, we address the adequacy of the BIA’s consideration of the documents submitted by Chen under our recent decisions in Zheng and Liu.[4] In Zheng, we explained that, when considering a motion to reopen, the BIA has an obligation to “actually consider the evidence and argument that a party presents,” and “to explicitly consider any country conditions evidence submitted by an applicant that materially bears on his claim,” 549 F.3d at 266, 268 (citations omitted). Although the BIA may consider evidence in a summary fashion, and need not “parse or refute on the record each individual ... piece of evidence offered by the petitioner,” the BIA should demonstrate that it has considered the petitioner’s evidence and “should provide us with more than cursory, summary or conclusory statements, so that we are able to discern its reasons for declining to afford relief to a petitioner.” Id. at 268 (quoting Wang v. BIA, 437 F.3d 270, 275 (2d Cir.2006)). We then vacated and remanded the BIA’s order denying Zheng’s motion to reopen because the BIA had “fail[ed] to discuss most of the evidentiary record in Zheng’s case, as well as the conclusions that the Court of Appeals for the Eleventh Circuit reached in Li [v. Attorney General, 488 F.3d 1371 (11th Cir.2007) ] concerning at least some of the documents” presented by Zheng. Id. at 269.
*735 In contrast to Zheng, in Liu we affirmed the BIA’s denial of a motion to reopen, finding that the BIA adequately addressed Liu’s evidence and arguments for us to review the substance of the BIA’s decision, and that the BIA’s denial was not an abuse of discretion. Liu, 555 F.3d at 149-50. The BIA’s decision in the instant case falls somewhere between the lack of consideration of the evidence in Zheng, and the thorough review conducted in Liu. Not surprisingly, Chen argues that the BIA’s decision is closer to Zheng, while the Government contends that the case is analogous to Liu.
Here, unlike in Zheng, the BIA took note of all the documents submitted by Chen in support of her motion to reopen and provided its assessment of those documents. Though neither the BIA’s consideration of Chen’s evidence nor its analysis of the applicable law was as thorough as the opinion in Liu, it provides sufficient analysis to enable us to discern its basis for rejecting Chen’s evidence, and gives us confidence that the BIA reviewed and considered all of Chen’s evidence. For the reasons that follow, the petition for review must be denied.
C.
Chen’s motion to reopen was filed almost three years after the BIA entered its final decision in her removal proceeding, well after the 90-day deadline. Consequently, Chen was required to show changed country conditions based on material and previously unavailable evidence to overcome the untimeliness of her motion. Chen argued that since the time of her prior hearing, the Fujian province government has increased the use of forced abortions and sterilizations. However, a review of the record reveals that the evidence submitted by Chen does not support a finding of changed conditions.
The documents Chen submitted include reports of coerced sterilization and abortion in various parts of China, but they do not show that these incidents represented a change from prior practices. For example, the 2005 Annual Report of the Congressional-Executive Commission on China states: “[t]he Chinese government continues its population control policy.... Coercive fines are the main enforcement mechanism, although reports of local authorities using physical coercion to ensure compliance continue, even though this practice violates Chinese law.” (emphasis added). Likewise, the 2006 Annual Report of the Congressional-Executive Commission on China states:
Some local officials charged with implementing the national population planning policy violate Chinese law by physically coercing abortions and sterilizations. Although physical coercion violates [the planning law] local officials continue to use physical coercion or the threat of physical coercion, to enforce compliance with population planning laws and regulations.... In 2006, officials in ... Fujian province forcibly sterilized women.
Chen has not submitted country reports— or any other evidence — to show that the practices reported in 2005 and 2006 represented a change from prior years.[5] Although Chen’s affidavit states that she “was told that since 2005, the government has increased the use of forced abortions and sterilizations,” it was not an abuse of *736 discretion for the BIA to conclude that this isolated hearsay statement was insufficient to meet her burden. Given the lack of evidence of changed conditions in China, the BIA did not abuse its discretion in concluding that Chen’s motion to reopen was time-barred.
D.
Our review of the record also supports the BIA’s conclusion that Chen failed to establish a basis for her fear of persecution as a returning national with U.S.-born children. In its opinion, the BIA took note of its prior decision in Matter of C-C- 23 I. & N. Dec. 899 (BIA 2006), in which it discussed the variable application of the Family Planning Law to Chinese nationals with children born overseas in contrast to those born in China; namely, that there were no reports of forced sterilization or abortion against “returnees from the United States.” Id. at 903. The BIA did not err when it concluded that Chen’s documents failed to overcome this finding.
For the foregoing reasons, we will deny Chen’s petition for review.

. Chen submitted: her own affidavit; an amended Form 1-589 in support of the asylum application; the birth certificates of Chen, her husband, and her son; a marriage certificate; a letter from her doctor verifying her second pregnancy; an affidavit from her father in China; a document entitled "Response of the Administrative Office of the National Population and Family Planning Committee to the Fujian Province Population And Family Planning Committee’s inquiry on the legal applicability and use of [Family Planning] Laws toward the reproductive behavior of Chinese Citizens residing in other countries,” dated 2006; the Changle City Family Q & A Handbook, dated July 1999; the Testimony of John Ail'd on China's New Family Planning Law, dated September 23, 2002; a Consular Information Sheet, dated May 29, 2003; a Letter in Response to the Issue of Identification of Nationality from the Department of Public Security of the People's Republic of China, dated October 22, 1997; the 2005 and 2006 Annual Reports of the Congressional-Executive Commission on China; the Testimony of Harry Wu before Congress on December 14, 2004; an article entitled “One Child Over Birth, the Whole Family Detained” from World Journal, dated March 11, 2007; an article entitled "China Shamed by Forced Abortions” from Times Online, dated 2005; and an article entitled "Who Controls the Family” from Washingtonpost.com, dated 2005.

. On appeal, Chen has not assigned error to the BIA's disregard for the 2005 and 2006 State Department Reports or the two documents discounted as lacking authenticity.

. The BIA had jurisdiction over Chen's motion to reopen under 8 C.F.R. § 1003.2, and we have jurisdiction to review the BIA’s decision pursuant to 8 U.S.C. § 1252.

. During the pendency of Chen’s petition for review, we decided Zheng v. Attorney General, 549 F.3d 260 (3d Cir.2008), and Liu v. Attorney General, 555 F.3d 145 (3d Cir.2009), concerning the level of consideration the BIA must afford to materials submitted by applicants in support of a motion to reopen. The parties submitted helpful supplemental briefing on the applicability of these decisions to Chen's case.

. In fact, the documents Chen submitted tended to show that some forced sterilizations and abortions occurred in prior years. For example, the 2002 Aird Testimony reports that there were “spectacular instances of coercion” since the late 1990s, that an investigative team from the U.S. State Department confirmed the persistence of coercive measures in China in 2002, and that there was a long-running practice of requiring late-term abortions in cases of unauthorized, but previously undetected, pregnancies.