**IMG-211**                                             **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-3615

_____

JIAN NAN JIN,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A072-499-791)
Immigration Judge:  Honorable Annie S. Garcy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 19, 2010

Before:  RENDELL, FISHER AND GARTH, Circuit Judges.

(Filed:  June 2, 2010 )
_____

OPINION
_____

PER CURIAM

Jian Nan Jin petitions for review of a decision rendered by the Board of

Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") decision denying

his motion to reopen.  For the reasons that follow, we will deny the petition for review.

Petitioner Jian Nan Jin is a citizen of the People's Republic of China and a native of the Yongjia County, Zhejiang Province, who arrived in the United States in 1993, without a valid entry document. He was charged as "excludable" from the United States pursuant to INA § 212(a)(7)(A)(i)(I). In 1994, the IJ denied Jin's applications for asylum and withholding of removal after a hearing, and ordered Jin excluded and removed from the United States. Jin did not appeal. He stayed in the country, married a native and citizen of China in 2000 here, and had two American-born children: Jeffrey Jin, born in 2001, and Justin Jin, born in 2007.

In 2008, Jin filed a counseled motion to reopen with the IJ based on changed country conditions regarding China's coercive family planning policy. He expressed his fear that upon his return to China with his family, the province would subject his wife to a forced abortion if she became pregnant in China, and would require one of them to be forcibly sterilized. He said that he also feared that the government would impose exorbitant fines. In support of his motion, Jin submitted his own affidavit and sworn letters from his sister-in-law and neighbor, a letter from the Family Planning Office of Ou Bei Town, in Zhejiang Province, and background material, including, among other things, assorted articles, official reports from Canada, the United States, and other countries, and documents from the Chinese government. (J.A. at 103-07.) The IJ denied the motion. Relying on In re S-Y-G-, 24 I. & N. Dec. 247, 251 (BIA 2007), and In re J-W-S-, 24 I. & N. Dec. 185, 190-91 (BIA 2007), the IJ found that Jin failed to carry his "heavy burden"

2

of establishing a material change in country conditions. (J.A. at 50.) The IJ also found that, as an alien subject to a final removal order, Jin was barred from pursuing a motion to reopen based on changed personal circumstances. (Id. at 51.)

The BIA affirmed for different reasons. Assuming without deciding that Jin satisfied the first two requirements of In re S-Y-G-, the Board concluded that he failed to make a prima facie showing that he "would be punished in a way that would give rise to a well-founded fear of persecution." 24 I. & N. Dec. at 251. The BIA dismissed the appeal and denied Jin's motion to remand. Jin filed this timely petition for review.

We have jurisdiction over the petition for review pursuant to INA § 242 [8 U.S.C. § 1252]. We review the BIA's findings of fact for substantial evidence and the denial of the motion to reopen for abuse of discretion. See Sevoian v. Ashcroft, 290 F.3d 166, 170 (3d Cir. 2002). The BIA's decision is entitled to "broad deference," see Ezeagwuna v. Ashcroft, 325 F.3d 396, 409 (3d Cir. 2003), and we will uphold it unless it was "arbitrary, irrational, or contrary to law." Tipu v. INS, 20 F.3d 580, 582 (3d Cir. 1994).

To prevail on his motion to reopen, Jin was required to establish prima facie eligibility for relief. See Guo v. Ashcroft, 386 F.3d 556, 563 (3d Cir. 2004). Because he filed his motion more than ninety days after the final administrative decision was rendered in his case, see 8 C.F.R. § 1003.23(b)(1), he was required to present evidence that is "material and was not available and could not have been discovered or

3

presented at the former hearing," which establishes "changed country conditions arising in the country of nationality." 8 C.F.R. § 1003.23(b)(4)(i).

On motions to reopen based on changed country conditions, the BIA requires first that the proffered evidence be "genuine, authentic, and objectively reasonable." In re S-Y-G-, 24 I. & N. Dec. at 251. Reopening may be warranted if the evidence proves that "(1) a relevant change in country conditions occurred, (2) the applicant has violated family planning policy as established in that alien's local province, municipality, or other relevant area, and (3) the violation would be punished in a way that would give rise to a well-founded fear of persecution." Id.

Relying on Zheng v. Attorney General, 549 F.3d 260 (3d Cir. 2008), Jin asserts that the BIA summarily denied his appeal without adequately reviewing the record. In Zheng, the BIA categorically rejected the petitioner's evidence of changed country circumstances without any indication that the Board had reviewed it. Here, however, the Board thoroughly reviewed the entire record, including all of Jin's background evidence, his affidavit, the letters of his sister-in-law, village neighbor, and the Family Planning Office in his hometown, and assorted articles and government reports, in reaching its decision that Jin failed to meet his burden of proof. See Liu v. Att'y Gen., 555 F.3d 145, 149-50 (3d Cir. 2009). Jin offers nothing to convince us that the BIA's assessment was an abuse of discretion.

Jin complains that the Board wrongly discounted his affidavit, the letter from the Family Planning Office, and the sworn letters of his sister-in-law and village neighbor, as unauthenticated, photocopied documents lacking sufficient detail. He says that the evidence, properly credited, demonstrates a well-founded fear of future persecution sufficient to establish prima facie eligibility for relief. Turning first to the Family Planning Office letter, it states that the township "strictly implements" the family planning policy of Zhejiang Province and that "citizens who have had two children will be targeted for sterilization, and must undergo a sterilization operation. . . . If you return to China and settle in China, and register your U.S.-born children in your household in China, you should strictly comply with the relevant family planning regulations as other local residents." (J.A. at 138.) The BIA discounted the letter, purporting to be an official document, because it was a photocopy without authenticating information, see 8 C.F.R. § 287.6.

Jin does not dispute the BIA's finding that the Family Planning Office letter lacked indicia of authenticity. Instead, he argues that the BIA abused its discretion by declining to give weight to the letter solely because it was unauthenticated. While Jin's failure to authenticate the letter does not per se require its exclusion, an absence of evidence concerning authenticity may undermine its evidentiary value. See Chen v. Gonzales, 434 F.3d 212, 219-20 (3d Cir. 2005). We conclude that the BIA's decision to accord less weight to the Family Planning Office letter is reasonable in light of this Court's

5

precedent. As the BIA noted, the 2007 news article that Jin submitted undermined the evidentiary value of the Family Planning Office letter because it indicated that Zhejiang Province employed economic sanctions to force compliance with China's one-child policy, and did not mention forced abortion or sterilization as a means of enforcement in that province. Moreover, the Country Reports for 2006 and 2007 do not list Zhejiang Province as one of the eight problem provinces that reportedly require 'termination of pregnancy' if the pregnancy violates provincial family planning regulations. (J.A. at 279 and 261, respectively.) Nor is Zhejiang Province identified as one of the provinces that employ "unspecified remedial measures to deal with out-of-plan pregnancies." (Id.) There is no other evidence on record that supports Jin's claim.[1]

Jin also argues that the BIA acted arbitrarily in discrediting photocopies of the sworn letters of Jin's sister-in-law and neighbor on appeal. He asserts that he submitted the originals of these documents to the Department of Homeland Security during the pendency of the motion to reopen before the IJ. He also argues that the BIA wrongly discounted his personal affidavit because it was not sufficiently corroborated by other record evidence. According to Jin, the Board essentially rejected the facts in his affidavit

---

[1] Jin's reliance on Li v. Attorney General, 488 F.3d 1371 (11th Cir. 2007) (vacating BIA's denial of reopening based on petitioner's evidence of recent campaign of forced sterilization in her home village in Fujian Province, which was consistent with government reports) is misplaced. Here, Jin's localized evidence is not consistent with any of the other evidence he submitted, including the State Department Country Reports on China for 2006 and 2007.

and the sworn letters of his sister-in-law and neighbor when it found them lacking in detail, contrary to Shardar v. Attorney General, 503 F.3d 308, 313 (3d Cir. 2007) (facts presented in motions to reopen should be "accepted as true unless inherently unbelievable"). We disagree. Assuming that the sworn letters were properly authenticated, we cannot say that the BIA abused its discretion in according them and Jin's affidavit less weight because they lacked adequate detail regarding the circumstances in which each of the forced abortions or sterilizations mentioned had occurred. Moreover, as the BIA correctly noted, although Jin claims that he will be subject to exorbitant fines amounting to as much as four times the local average income, he failed to provide the necessary supporting evidence, see Li v. Att'y Gen., 400 F.3d 157, 168 (3d Cir. 2005), and thereby failed to demonstrate "economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993).

For the foregoing reasons, we will deny the petition for review.