

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-4-2009

# Liu v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 07-3346

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Liu v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1809.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1809

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 07-3346

———————

YING LIU
a/k/a HONG YING LIN,

Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES,

Respondent

———————

On Petition for Review of a Decision and Order of the
Board of Immigration Appeals
(BIA No. A77-121-691)
Immigration Judge:  Alberto J. Riefkohl

———————

Submitted under Third Circuit LAR 34.1(a)
October 28, 2008

BEFORE:  SLOVITER and GREENBERG, Circuit Judges,

and IRENAS, <u>District</u> <u>Judge</u>\*

(Filed: February 4, 2009)

———————

Gary J. Yerman
Yerman & Associates
401 Broadway
Suite 1210
New York, NY 10013-0000

    <u>Attorneys for Petitioner</u>

Jeffrey S. Bucholtz
Acting Assistant Attorney General
U.S. Department of Justice
Civil Division

Alison Marie Igoe
Senior Litigation Counsel
Office of Immigration Litigation
Edward J. Duffy
Paul F. Stone
United States Department of Justice
Office of Immigration Litigation

———————

\*The Honorable Joseph Irenas, Senior Judge of the United States District Court for the District of New Jersey, sitting by designation.

2

P.O. Box 878
Ben Franklin Station
Washington, DC 20044-0000

    Attorneys for Respondent

_____

OPINION OF THE COURT

_____

GREENBERG, Circuit Judge.

## I.  INTRODUCTION

This matter comes on before this Court on a petition for review brought by Ying Liu of a decision and order entered July 25, 2007, of the Board of Immigration Appeals ("BIA").  Liu is a citizen of the People's Republic of China from Fujian Province who has resided in the United States since 1999 even though she does not have a lawful presence here and an immigration judge ("IJ") ordered her removed.

Liu first attempted to enter this country when she flew to Atlanta in 1997 but inasmuch as she could not legally enter she was not admitted and thus she returned to China.  Nevertheless, on June 2, 1999, she again arrived in the United States, this time at Los Angeles, but airport immigration personnel advised her that she did not appear to be admissible and did not have the

3

documentation required to authorize her admission.[1] At that time, in a sworn statement, she said that she was a citizen of China and had been living legally in Brazil. This claim had documentary support because Liu possessed a Chinese passport issued on November 19, 1998, by the Chinese Consulate General in Sao Paulo, Brazil. Moreover, her knowledge of facts about Brazil further supported her claim to have been in that country, as she correctly identified Brasilia as its capital and Portugese as its language. She also stated at Los Angeles that after she left Brazil she went to Cambodia and Hong Kong before coming to the United States. At Los Angeles Liu gave her reason for coming to this country as the economic conditions in Brazil as she said they were not good and thus she had come to the United States "[t]o seek job opportunity." App. at 288. Of course, this economic explanation for her entry into the United States could not have been a basis for the granting of asylum.[2]

---

[1]In her brief Liu indicates that she "entered the United States on September 24, 1999," petitioner's br. at 2, but this date appears to be incorrect. For our purposes the difference between the June 2, 1999, and September 24, 1999, is immaterial as what is significant is not when she arrived but the fact that she did not have a lawful basis to come here as well as what she said after she arrived and in subsequent proceedings.

[2]In Li v. Attorney General, 400 F.3d 157, 159 (3d Cir. 2005), we held "that deliberate imposition of severe economic disadvantage because of a protected ground may rise to the level of persecution." Liu's claim did not meet the Li criteria for asylum.

4

In October 1999, the former Immigration and Naturalization Service initiated removal proceedings against Liu. At a hearing on those proceedings on August 28, 2000, Liu dramatically shifted her explanation of why she came to the United States and in doing so demonstrated her lack of concern for the truth by testifying that she never had been to Brazil but had left China by reason of her opposition to its family planning population control policies. She attempted to explain away her earlier claim of having resided in Brazil on the basis of it being a fabrication that a smuggler suggested to her. Thus, she conveniently changed her reason for coming to this country from seeking economic improvement, a reason plainly insufficient to support an asylum claim, to her opposition to Chinese birth control measures, a reason that might support an asylum claim. Clearly, she gave a materially false statement either at the Los Angeles airport when she entered the country or at her hearing before the IJ in her initial judicial attempt to obtain asylum.

The IJ understandably rejected Liu's testimony because the evidence demonstrated, among other things, that Liu's original statement that she had been in Brazil had been accurate, as her passport had been issued in that country and was stamped showing her entry into Cambodia.[3] Thus, the IJ found that she was "constantly adjusting her story" and "her oral testimony and

---

[3]Although the IJ did not mention the point, Liu's testimony that a smuggler fabricated her alleged Brazil connection is hard to believe because a smuggler likely would have known that a desire for economic improvement could not support an asylum application.

5

her written application for asylum were strictly a concocted and invented story which had nothing to do with the original facts to come to this country." Id. at 200.[4] Accordingly, the IJ denied her application for asylum, withholding of removal, and protection under the Convention Against Torture. Moreover, the IJ ordered her removed from the country. Liu appealed from the IJ's order to the BIA which affirmed the IJ's decision without opinion on November 6, 2002. She did not file a petition for review of the BIA's decision and order.

But Liu did not leave the United States, even though she did not have legal status here and the IJ, affirmed by the BIA, ordered her removed. Rather, she remained in this country, married, and had two children. Subsequently, however, she filed a motion to reopen and a request to file a successive asylum application with the BIA predicated on her claim that if removed to China she would be sterilized forcibly on account of

---

[4]Sometimes we have been critical of IJs because they have questioned the bona fides of an alien's testimony on the basis of very slight and unimportant inconsistencies in it. See, e.g., Gabuniya v. Attorney General, 463 F.3d 312, 322 (3d Cir. 2006). The situation here does not come within that category because the fundamental changes in the reasons that Liu gave for coming to this country and in describing where she previously had been cannot be attributed to a clarification of her memory and are highly significant. In this regard, we point out that her claim that she had been in Brazil but left that country because of economic conditions was inconsistent with her claim that she came to the United States to avoid China's birth control policies.

6

the birth of her children in this country. Liu filed numerous documents in support of her application, eleven she listed as "Personal Evidence" and fourteen she listed as "Background Information."

Liu's application to reopen, however, was not successful for on July 25, 2007, the BIA issued a comprehensive decision and order denying her motion. In its decision the BIA pointed out that both her motion to reopen and her request to file a successive asylum application were untimely. Furthermore, both applications depended on Liu demonstrating that there had been changed conditions or circumstances in China between the time of her original asylum and removal proceedings and the filing of the motion to reopen, and that the evidence showing the changed conditions previously had been unavailable and could not have been discovered or presented at her earlier hearing. The BIA concluded that Liu had not made these showings and thus denied her motion. Moreover, the BIA concluded that Liu did not demonstrate that she had a reasonable fear of persecution if she returned to China. Furthermore, the BIA rejected Liu's contention that 8 U.S.C. § 1158(a)(2)(D) established an independent basis for an alien filing an asylum application at any time without regard for the time limitations otherwise applicable to motions to reopen. Liu has filed a petition for review of the July 25, 2007 decision and order, and we now deny her petition.

On this petition for review Liu makes four principal points: (1) the BIA erroneously mischaracterized her claims by finding that she based them on the birth of her children in this country; (2) the BIA's conclusion that she had not demonstrated

7

germane changed circumstances in China was wrong; (3) she was eligible to file a successive asylum application because, in her view, the material provisions in the Immigration and Nationality Act ("INA") "when read together could not be clearer. Congress expressly stated that an applicant could move to reopen without concern for time limitations, upon a showing of changed conditions that were previously unavailable, in order to apply for asylum." Petitioner's br. at 23 (emphasis in original); and (4) she is eligible for asylum because she has a reasonable fear of persecution if she returns to China.

## II. JURISDICTION AND STANDARDS OF REVIEW

The BIA had jurisdiction under 8 C.F.R. § 1003.2(c) and we have jurisdiction pursuant to 8 U.S.C. § 1252. There are two standards of review applicable on this petition. First, we review the denial of a motion to reopen for an abuse of discretion. See Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004). Second, again using a deferential standard of review, we uphold the BIA's factual determinations if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 815 (1992) (citation and quotation marks omitted). In applying the second standard, we can reject the BIA's factual findings only if "any reasonable adjudicator would be compelled to conclude to the contrary." Id.; 8 U.S.C. § 1252(b)(4)(B).

## III.  DISCUSSION

We reject all of Liu's contentions.  First, the BIA in considering Liu's motion to reopen understood the obvious point that the birth of Liu's children in the United States was a change in her personal circumstances and not a change in conditions in China. Thus, as we explain below, the question became, as the BIA correctly recognized, "whether [Liu] has successfully presented evidence which was previously unavailable or undiscoverable, that shows a material change in the coercive population control policy in China since her last hearing."  App. at 2.

Second, the record fully supports the BIA's conclusions that Liu did not demonstrate changed circumstances in China and would not have a reasonable fear of persecution if she returned to China.  It is clear that under our standard of review we must uphold these conclusions.  In reviewing the BIA's findings we, of course, consider our nearly contemporaneous opinion in Zheng v. Attorney General, 594 F.3d 260 (3d Cir. 2008), and find that the BIA's decision was consistent with the standards that we set forth in that case.  In Zheng, the BIA did not consider adequately the materials that the petitioners had submitted with their applications to reopen, but in this case it certainly did so.

In this regard we take the unusual step of quoting the BIA's conclusions at length as they demonstrate the type of findings that are sufficient under Zheng:

[Liu] submits her affidavit claiming that upon

9

deportation to China she will likely be targeted and forcibly sterilized due to the birth of her 2 United States citizen children. She also submits her father-in-law's letter dated February 20, 2007, which says that the [Chinese Population and Family Planning Law ("PFPL")] is executed more strictly in [her] hometown, Changle City, Fujian Province. He mentions a villager who was forced to have an abortion because she had already given birth to a son. He believes that it is highly like that his daughter will be sterilized by government officials upon her return. [Liu] also submits additional background evidence of country conditions.

Most notably, [Liu] contends that the 2005 and 2006 State Department Country Reports establish a clear inference that conditions in China have deteriorated drastically, and the use of persecutive birth control methods is on the rise. However upon closer examination, the reports only indicate that the Chinese government continues its population control policy and that enforcement varies by province. Contrary to what [Liu] argues, the 2006 Country Report does not confirm for the first time that incidents of forced sterilization occur in Fujian Province. It says that Fujian officials 'reportedly' sterilized women. [Liu] also presents the Congressional Executive Commission on China's 2006 Annual Report, which describes new measures that the Chinese

10

government is taking to ensure enforcement of the PFPL. Additionally, [Liu] contends that a March 14, 2006, letter from the 'Administrative Office of the National Population and Family Planning Committee' regarding the legal applicability and use of laws toward the reproductive behavior of Chinese citizens residing abroad shows that she would be sterilized upon her return. However, as addressed in the recent precedent[ial] decision, Matter of J-W-S-, 24 I & N Dec. 185, 190-93 (BIA 2007), the Population and Family Planning Commission of Fujian Province, in response to an inquiry by the U.S. Consulate General in Guangzhou, stated in an October 2006 letter that children born abroad, if not registered as permanent residents of China, are not considered against the number of children allowed under China's family planning laws. Bureau of Democracy Human Rights, and Labor, U.S. Dep't of State, China: Profile of Asylum Claims and Conditions 30 (May 2007) [hereinafter 2007 Profile]. According to the 2007 Profile 'a person born in the United States to Chinese parents who enters China on a U.S. passport . . . will be regard as a U.S. citizen.' By national regulation, children born overseas are 'not . . . counted' for birth planning purposes when the parents return to China. In Matter of J-W-S- this Board concluded that the Chinese government does not have a national policy of requiring forced sterilization of a parent who returns with a second child born

11

outside of China. The background evidence presented in the instant case does not alter this assessment.

App. at 2-3 (certain internal citations omitted).[5] After setting out the foregoing findings, the BIA concluded in a finding our standard of review requires us to accept, that "[n]one of the evidence presented states or infers that overseas Chinese returnees are subject to forced sterilization after giving birth to 2 children abroad." Id. at 3.

Ordinarily, as we pointed out in Zheng:

[A] motion to reopen must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened [but] the 90-day limitation does not apply if the movant seeks reopening based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented

_____

[5]It is significant that Chinese officials correctly understand that children born in the United States to Chinese parents are United States citizens. After all, it seems entirely logical that the Chinese officials would exclude United States citizens when considering its birth control policies, as such persons are likely to live in this country, at least if not registered as permanent residents of China.

12

at the previous hearing.

Zheng, 549 F.3d at 265 (internal quotation marks and citations omitted).  Liu, however, filed more than a motion to reopen as she included a successive application for asylum in her motion to reopen when filing that motion; the two procedures are not identical.  In this regard Liu correctly concedes, as the BIA held, that after completion of removal proceedings an alien must file an asylum application in conjunction with a motion to reopen. Nevertheless, though her argument is somewhat ambiguous on the point, she may be contending that an alien is able to file a successive asylum application predicated on a change in personal circumstances, in her case the birth of her children in this country, even though she does not demonstrate a change in country conditions justifying a motion to reopen.

In considering Liu's possible argument based on a change in personal circumstances, we are aware that 8 U.S.C. § 1158(a)(2)(D) permits an untimely or successive asylum application based on "the existence of changed circumstances which materially affect" the alien's eligibility for asylum. Furthermore, we acknowledge that these circumstances arguably could include the birth of children born in this country, as the term "changed circumstances" in 8 U.S.C. § 1158(a)(2)(D) is not limited expressly to circumstances in the alien's country of nationality.  But we are of the view that this provision must be applied in harmony with 8 U.S.C. § 1229a(c)(7)(C) and the regulations at 8 C.F.R. §§ 1003.2(c)(2), 1003.2(c)(3)(ii), and 1003.23(b).  Accordingly, we conclude that 8 U.S.C § 1158(a)(2)(D) allows successive asylum applications only within the 90-day reopening period for orders denying asylum

13

unless the alien can show changed country conditions on the required accompanying motion to reopen.

It seems plain that 8 U.S.C. § 1229a supports the conclusion that the BIA reached as any other construction of the INA would frustrate Congress's intention in establishing a 90-day reopening period subject to a changed country conditions exception. Furthermore, our result is consistent with the intent Congress expressed in 8 U.S.C. § 1158(a)(2)(C) to preclude an alien from filing an asylum application if she "previously applied for asylum and had such application denied." Thus, we are satisfied that in considering an application to file a successive asylum application the BIA should apply 8 U.S.C. § 1229a(c)(7)(C)(ii), which provides that the 90-day time limit on motions to reopen does not apply if the motion is to apply for asylum or withholding of removal based on "changed country conditions arising in the country of nationality." In this case, Liu did not meet that exacting standard, and thus the BIA correctly denied her application.

We have not overlooked the possibility that under the BIA's construction of the INA an alien applying initially for asylum beyond the ordinary one-year limitation in 8 U.S.C. § 1158(a)(2)(B) after her arrival in the United States might be successful in her application without showing a change in country conditions after the time of her entry, whereas an alien otherwise similarly situated would not be successful if she previously unsuccessfully had applied for asylum. Nevertheless, if we reached a contrary conclusion and did not subject an alien citing changed personal circumstances in seeking asylum to the numerical and time limitations on motions to reopen, as well

14

requiring that regardless of her changed personal circumstances she demonstrates that there are changed country conditions, we would not honor Congress's purpose in the INA to avoid abuse of the system. See Joaquin-Porras v. Gonzales, 435 F.3d 172, 179-80 (2d Cir. 2006).

We observe in reaching our conclusions we have much company because the Court of Appeals for the Second Circuit within the last year squarely held that "an alien subject to a final order of removal who files a successive asylum application based only on changed personal circumstances must also file a motion to reopen based on changed country conditions pursuant to 8 C.F.R. § 1003.2(c)(3)(ii), when the ninety-day deadline has passed for such a motion." Jin v. Mukasey, 538 F.3d 143, 147 (2d Cir. 2008). Jin, in turn, cited opinions of four other courts of appeals reaching the same result. Id. at 152.[6] We also point out that our result is consistent with the result the BIA consistently reaches as it has held that a "successive asylum application cannot be considered . . . except as part of a timely and properly filed motion to reopen or one that claims that the late motion is excused because of changed country conditions." In re C-W-L- 24 I. & N. Dec. 346, 354 (B.I.A. 2007).

It is also significant that if we did not reach our result, we would permit an alien who had failed to obtain asylum but nevertheless illegally remained in the country following an order of removal to extend her time for applying for asylum through her control of her personal circumstances by marrying and

---

[6]One of those opinions is a not precedential opinion in our Court on which we do not rely.

15

having children, even though it is clear that Congress intended to limit successive applications for asylum. On this point, we agree with the Court of Appeals for the Second Circuit, which in Wang v. BIA, 437 F.3d 270, 274 (2d Cir. 2006), stated that such "gaming of the system in an effort to avoid deportation is not tolerated by the existing regulatory scheme." Furthermore, if we detached a changed personal circumstance application for asylum after an initial rejection of an asylum claim from the limitations on motions to reopen, we in effect would circumvent 8 U.S.C. § 1229a(c)(7)(A), which provides that "[a]n alien may file one motion to reopen proceedings under this section."

In sum, we defer to the BIA's construction of the INA in which it concluded that after completion of removal proceedings an alien must file an asylum application in conjunction with a motion to reopen and must meet the time and numerical limitations on motions to reopen. We think it is clear that the BIA's construction of the INA is owed deference under Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778 (1984). See Briseno-Flores v. Attorney General, 492 F.3d 226, 228 (3d Cir. 2007). Moreover, the BIA's construction of the INA seems to us to be based on a permissible reading of the statute. See INS v. Aguirre-Aguirre, 526 U.S. 415, 424, 119 S.Ct. 1439, 1445 (1999).

For the foregoing reasons the petition for review of the decision and order of the BIA entered July 25, 2007, will be denied.

16