*843 OPINION OF THE COURT
PER CURIAM.
Hsaio T. Huang is a native and citizen of the People’s Republic of China who entered the United States without inspection on August 11, 2004. He was placed in removal proceedings for entering the United States without valid entry documents pursuant to INA § 212(a)(7)(A)(i)(l). He conceded removability and applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT), claiming that he had a well-founded fear that, if he returned to China, he would be persecuted if he practiced Falun Gong and he would be persecuted and questioned about his association with his sister, a senior Falun Gong practitioner who left China in 2000.
After a hearing, the IJ found Huang to be incredible, denied all relief, and ordered him removed to China. Among other things, the immigration judge found it implausible that Huang could not obtain corroborating documentation of his Falun Gong practice from his sister or his mother.[1] The IJ also determined that, even if Huang was credible, there was no evidence of past persecution and Huang failed to demonstrate a reasonable fear of future persecution based on his sister’s practice of Falun Gong. The BIA affirmed the IJ’s decision and dismissed the appeal on March 11, 2008. Huang did not file a petition for review.
On April 9, 2008, Huang filed a motion to reopen accompanied by a letter from his mother dated March 26, 2008, and copies of two summonses indicating that “The Public Security Bureau of Lianjiang County of Fujian Province” required the attendance of Huang and his sister “for investigation” at the Bureau on March 24, 2008. In her letter, Huang’s mother stated that her previous letters to the IJ could not be delivered to the United States because they got lost or were confiscated by Chinese authorities. She stated that the Chinese authorities typically investigated Falun Gong members “[ejvery New Year.” She said that when Huang and his sister were still in China, two village cadres and a local police officer came to her home regularly to speak to Huang’s sister, and that in 2000, they wanted to question Huang about his sister. According to Huang’s mother, after Huang and his sister fled, the police come to her home looking for Huang and his sister “every another period of time.” On March 21, 2008, two policemen came to her house and left summonses for Huang and his sister. She said that Huang would suffer persecution and would be jailed if he returned to China.
The BIA denied the motion to reopen, holding that Huang failed to show that a letter from his mother was not available prior to his hearing in 2007. The Board found inconsistencies in the mother’s let *844 ter, Huang’s affidavit accompanying his motion to reopen, and his hearing testimony, which undermined his claim that information from his mother corroborating his claim could not have been submitted in the removal proceedings. Specifically, the Board noted that both Huang’s affidavit in support of his motion to reopen and his mother’s letter indicated that she had written more than one letter to the immigration court and that Huang did not receive them possibly because the letters were lost or confiscated by Chinese authorities. At his removal hearing, however, Huang testified that his mother sent only one letter, addressed to Huang, which he did not receive because he had moved to another city. The Board further noted that, according to Huang’s hearing testimony, he was in telephone contact with his mother, and, thus, he could have obtained a letter from her prior to his hearing.
As for the merits of the motion to reopen, the BIA ruled that Huang failed to show prima facie eligibility for asylum or other relief. The Board determined that the mother’s letter was entitled to little weight as corroborating evidence because it was “vague and self-serving” about the visits by local police to her home after Huang and his sister fled, and because the letter contradicted Huang’s hearing testimony. In particular, the Board noted that Huang testified to only one visit to his home by local Chinese authorities in 2000; he made no mention of the visits by local police officers that his mother reported had occurred after Huang and his sister fled China. The BIA observed that the public summonses dated March 21, 2008, were unauthenticated and were otherwise lacking any indicia of reliability. The Board held that, even assuming the authenticity and reliability of the summonses, the fact that Huang was wanted for questioning did not amount to persecution as that term is defined under immigration law. Huang filed this timely petition for review.
The only issue before us is the BIA’s order, entered on July 30, 2008, denying Huang’s motion to reopen. We have jurisdiction under 8 U.S.C. § 1252(a) to review the BIA’s denial of a motion to reopen. We review the BIA’s denial of the motion on the ground that no new evidence was presented for abuse of discretion. Sevoian v. Ashcroft, 290 F.3d 166, 170 (3d Cir.2002). As for the BIA’s denial of the motion on the ground that Huang failed to make a prima facie case for relief, we review the Board’s findings of fact for substantial evidence and its ultimate decision to deny the motion under the deferential abuse of discretion standard. Id.; see also Liu v. Att’y Gen., 555 F.3d 145, 148 (3d Cir.2009). An abuse of discretion exists if the BIA’s decision is “arbitrary, irrational, or contrary to law.” Sevoian, 290 F.3d at 174.
“There are both procedural and substantive hurdles that must be overcome in a motion to reopen removal proceedings.” Shardar v. Attorney General, 503 F.3d 308, 313 (3d Cir.2007). Proeedurally, motions to reopen generally must be filed within 90 days of the final administrative decision unless, inter alia, the motion is based on “ ‘changed circumstances arising in the country of nationality ... if such evidence is material and was not available and could not have been discovered or presented at the previous hearing[.]’ ” Id. (quoting 8 C.F.R. § 1003.2(c)(3)(ii)). If the procedural hurdle is cleared, the question becomes one of substance — whether the petitioner has shown prima facie eligibility for the requested relief. See id. That standard requires a petitioner to show a “reasonable likelihood” of ultimately prevailing on his claims. Guo v. Ashcroft, 386 F.3d 556, 563 (3d Cir.2004).
*845 Huang argues that he presented previously unavailable, material evidence of ongoing persecution of Falun Gong members by local police and, in particular, of an investigation targeting him and his sister, which was initiated by Chinese authorities in March 2008, after his removal hearing had concluded. He asserts that the Board failed to give proper weight to the mother’s letter concerning the police visit in March 2008, because it was based on the erroneous conclusion that Huang’s mother did not explain why Chinese authorities were still investigating Huang’s sister more than eight years after she left the country. In support of his argument, Huang points to his mother’s explanation that investigations of suspected Falun Gong members typically occurred every Chinese New Year.
After careful consideration of Huang’s arguments on appeal, we conclude that the BIA did not abuse its discretion in finding that the mother’s letter presented evidence that was not “new.” As the Board noted, Huang could have discovered most of the information contained in his mother’s letter prior to his removal hearing. 8 C.F.R. § 1008.2(e)(1). For instance, he could have learned through phone calls with his mother that Chinese authorities were conducting yearly investigations of Falun Gong members and coming to the mother’s house looking for them, in particular, “every another period of time.”
The summonses and the information in the mother’s letter about the March 2008 police visit were not available before the hearing and, thus, the evidence is newly discovered. We conclude, however, that substantial evidence supports the BIA’s finding that Huang failed to demonstrate a reasonable likelihood that this new evidence would result in eligibility for relief. Huang’s new claim that Chinese authorities were interested in questioning him in March 2008 is linked to his original asylum claim that he would be persecuted by Chinese authorities if he practiced Falun Gong there, a claim that was rejected by the IJ and the BIA as incredible. Huang contends that the BIA erred in finding that the summonses were entitled to little or no weight because they were not properly authenticated pursuant to 8 C.F.R. § 287.6, and erred in failing to give his mother’s letter proper weight. As for the lack of authentication, Huang correctly notes that § 287.6 is not an absolute rule of exclusion. See Liu v. Ashcroft, 372 F.3d 529, 533 (3d Cir.2004). Here, however, the Board did not decide the case entirely on the conclusion that the evidence was unauthenticated. Rather, the Board also held in the alternative that, even if the summonses were genuine, Huang had not demonstrated a reasonable likelihood that he would be entitled to relief based on the new evidence. We find that there was substantial evidence to support the BIA’s conclusion that the summonses for an investigation — the focus of which was not revealed — and Huang’s mother’s information about her March 2008 encounter with Chinese authorities do not constitute persecution for asylum purposes, as the evidence does not suggest a reasonable likelihood of “threats to life, confinement, torture, [or] economic sanctions so severe that they constitute a threat to life or freedom.” Fatin v. INS, 12 F.3d 1238, 1240 (3d Cir.1993). Thus, we conclude that the BIA did not abuse its discretion in denying Huang’s motion to reopen.
Accordingly, we will deny the petition for review.

. Huang testified at the removal hearing that he did not practice Falun Gong while he was in China, but that his sister did. In 1999, when the Chinese authorities began to crack down on the Falun Gong movement, Huang's sister and her fellow practitioners practiced Falun Gong at his house while he stood guard. She fled China in 2000; she now lives somewhere in Canada. Huang was told by a woman in the village that the authorities were looking to detain him for questioning about his sister. In March 2000, the authorities came to his family's house (where he lived), while he was there. His mother talked in a loud voice to the officer, so that Huang would know to hide. After this incident, Huang called his aunt in New York City and requested her financial help in smuggling him out of the country. He denied any physical harm at the hands of the Chinese authorities while he was in China. When he was freed from detainment in San Diego, he moved to New York where he lived with his aunt and her family. In 2006, he started practicing Falun Gong regularly at his aunt’s house. He moved to Philadelphia sometime in 2006.