NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3124
_____

REN QUAN ZHENG,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A079-301-998)
Immigration Judge:  Charles M. Honeyman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 13, 2011

Before:  SCIRICA, FISHER and ALDISERT, Circuit Judges

(Filed:  April 19, 2011)
_____

OPINION OF THE COURT
_____

PER CURIAM.

        Ren Quan Zheng petitions for review of an order of the Board of Immigration

Appeals ("BIA") denying his motion to reopen his removal proceedings.  For the reasons

that follow, we will grant the petition for review and remand for further proceedings.

Because the parties are familiar with the background, we will present it here only briefly. Zheng is a native and citizen of China who illegally entered the United States in 2000. He conceded removability but applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). His application was based on his claims of past persecution and fear of future persecution for having violated China's coercive family planning laws. In 2002, after a hearing at which Zheng testified in support of his claims, the Immigration Judge ("IJ") made an adverse credibility finding, denied all forms of requested relief, and ordered Zheng's removal to China. The BIA agreed with the IJ's decision and dismissed Zheng's appeal in 2003. In May 2007, Zheng filed a motion to reopen concerning his family planning claim. In August 2007, the BIA denied the motion as untimely, but it also indicated that the motion would not have been granted if it were considered on its merits.

In October 2009, Zheng filed his second motion to reopen. This time, he asserted a fear of religious persecution as a practicing Christian and claimed that the authorities in China have intensified their persecution of Christians who attend churches not approved by the Chinese government. He stated that he would not attend a government-approved church if he returned to China and would instead join an underground church, where Christians can freely exchange their ideas. Zheng submitted documents in support of his motion. On June 21, 2010, the BIA denied the motion to reopen, noting that the motion was both time-barred and number-barred under the regulations. The BIA concluded that Zheng's church attendance was a change in personal circumstances rather than a change

2

in circumstances or conditions arising in China that would exempt him from the time limitations for filing a motion to reopen. Further, the BIA found that Zheng's evidence did not support the assertion that country conditions had changed concerning the treatment of Christians in China. The BIA also noted that Zheng did not submit any evidence that the Chinese government is aware of his religious activities in the United States. This petition for review followed.

We have jurisdiction pursuant to 8 U.S.C. § 1252 to review the BIA's denial of Zheng's motion to reopen, and we apply the abuse of discretion standard to our review. See Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002). Thus, to succeed on his petition for review, Zheng must show that the BIA's decision was somehow arbitrary, irrational, or contrary to law. See id.

An alien generally may file only one motion to reopen and must file it with the BIA "no later than 90 days after the date on which the final administrative decision was rendered." 8 C.F.R. § 1003.2(c)(2). The time and number requirements are waived for motions to reopen that rely on evidence of "changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and could not have been discovered or presented at the previous proceeding." 8 C.F.R. § 1003.2(c)(3)(ii). Zheng argues that he meets this exception as to the time and number restrictions. Although Zheng would have no claim for relief absent a change in his personal circumstances of having joined a church in the United States, we have recognized that an alien who has been ordered removed can file an untimely or successive asylum

3

application based on changed personal conditions if he can also show changed country conditions in his motion to reopen. Liu v. Att'y Gen., 555 F.3d 145, 150 (3d Cir. 2009).[1]

In support of his motion to reopen, Zheng submitted his personal affidavit and a letter from his church confirming his weekly regular attendance and participation. Zheng also submitted evidence to show changed country conditions. For example, Zheng submitted a letter dated April 8, 2009, from a cousin in China. The letter states that the cousin has been attending church meetings for about five years, meeting at different locations with other members to avoid detection by the Chinese government. The cousin wrote, "A lot of things happened to our church last year. During December of last year, we were discovered by the local government." A.R. 21. The cousin recounts that officials damaged some property at the home where a church meeting was being held, and the cousin, along with the homeowner and other church members, were taken to the police station, where the cousin was beaten. The group was released five days later. Zheng also submitted a letter from a friend in China, who wrote about a separate incident in January 2009, when the police arrived at a church Bible discussion and prayer meeting being held at the friend's house. The friend stated that the police arrived at the meeting and informed the group that their meeting was illegal. The friend and five other church members were taken to the police station and beaten. After five days of detention, they

---

[1] The government acknowledges our decision in Liu and asserts that Zheng's change in personal circumstances of joining a church is distinct from a change in country conditions required for reopening under section 1003.2(c)(3)(ii). See Gov't. Brief at 15 (citing Liu, 555 F.3d at 150-51). To the extent that the government argues that a change in personal circumstances can never be a basis of a motion to reopen for changed country conditions,

were released with a warning not to engage in similar gatherings.  Zheng also submitted

articles dating from 2006 to 2009, relating to China's crackdown on underground

churches and reporting increased numbers of detentions and other harassment of

Christian congregants during that time period.

Zheng argues that the BIA abused its discretion by basing its decision on a

selective reading of the evidence and discussing only one of Zheng's articles in its

decision.  Indeed, with respect to its finding that Zheng's argument of changed country

conditions is not supported by the proffered evidence, the BIA stated only that "[t]he

conditions discussed in the respondent's articles illustrate continuing conditions in China,

reflected by, inter alia, the 4 year span in reportage.  In fact, the November 30, 2006,

New York Times article indicates that underground churches have experienced strife

since the Falun Gong movement in the late 1990's."  A.R. 3 (citation omitted).  The BIA

did not mention or explain why other articles describing "worsening" conditions and

"new crackdowns" on Christians during the 2006-2009 period were insufficient to

support Zheng's position, even though Zheng discussed these articles in his brief to the

BIA.[2]  We add the BIA mentioned the letters submitted as evidence, but it provided no

explanation why they did not support Zheng's application.

---

we reject the argument insofar as it is inconsistent with our decision in Liu.

[2] Moreover, although the articles span a four-year period in dates, we note that those years post-date the BIA's 2003 final order regarding Zheng's original removal proceedings.  Without further explanation, that time span in reporting alone would not necessarily drive the conclusion that the evidence illustrates a "continuing" condition as opposed to a "changed" condition in China.

Although the BIA need not "parse or refute on the record each individual . . . piece of evidence offered by the petitioner," it "should provide us with more than cursory, summary or conclusory statements, so that we are able to discern its reasons for declining to afford relief to a petitioner." Zheng v. Att'y Gen., 549 F.3d 260, 268 (3d Cir. 2008) (quoting Wang v. BIA, 437 F.3d 270, 275 (2d Cir. 2006)). In Zheng, we vacated the BIA's denial of two motions to reopen based on changed country conditions in China because the BIA failed to discuss in an adequate fashion the petitioners' evidence or explain why the evidence was not sufficient. See Zheng, 549 F.3d at 268-69, 271. We reach the same result here.

In its brief, the government discusses the evidence submitted by Zheng and argues why it believes that it does not demonstrate a change in country conditions. None of this reasoning is present in the BIA's decision. We may only review the BIA's decision based on the rationale that it provided. See SEC v. Chenery Corp., 332 U.S. 194, 196 (1947); Konan v. Att'y Gen., 432 F.3d 497, 501 (3d Cir. 2005). Because the BIA's decision does not allow us to discern its reasons for denying the motion to reopen, we will grant the petition for review and remand for further proceedings.[3]

_____

[3] We leave the question of whether Zheng has presented a prima facie case for relief to the BIA to determine, after it examines the threshold issue of whether Zheng has showed changed country conditions. See Shardar v. Att'y Gen., 503 F.3d 308, 312 (3d Cir. 2007).