**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3419
_____

ALHAJA OLUMUYIWA,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A073-045-713)
Immigration Judge:  Honorable Donald Vincent Ferlise
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 18, 2011
Before:  MCKEE, Chief Judge, SMITH and GARTH, Circuit Judges

(Opinion filed:  May 20, 2011)
_____

OPINION
_____

PER CURIAM

Alhaja Olumuyiwa petitions for review of the Board of Immigration Appeals'

("BIA") denial of her motion to reopen.  We will deny the petition.

I.

1

Olumuyiwa is a citizen of Nigeria who entered the United States without inspection in 1992. She applied for asylum claiming persecution on account of her Muslim religion. An Immigration Judge denied her application and ordered her removal to Nigeria, and the BIA dismissed her appeal in 2002. The BIA concluded that, although Olumuyiwa suffered past persecution, the Government showed that she could safely relocate within Nigeria, including to its capital city of Lagos. Olumuyiwa did not petition for review. Instead, she filed a motion for reconsideration, which the BIA denied. Olumuyiwa petitioned for review of that ruling, and we denied her petition. See Olumuyiwa v. Ashcroft, 95 F. App'x 432 (3d Cir. 2004).

Over six years later, and after having been detained by the Government, Olumuyiwa filed with the BIA the motion to reopen at issue here. Olumuyiwa presented evidence that she has converted to Christianity since coming to the United States. She also submitted various articles and country reports describing increased violence between Muslims and Christians in Nigeria. She argued that she now fears persecution both by Muslims on account of her conversion to Christianity and by Christians who will continue to impute her former Muslim religion to her.

The BIA denied her motion by order issued August 5, 2010. The BIA held that none of Olumuyiwa's evidence calls into question its earlier ruling that she could safely relocate to Lagos. It also noted that her conversion to Christianity is a changed personal circumstance that is not a basis to reopen. It further reasoned that Olumuyiwa's evidence shows merely the continuation of conditions that persisted at the time of her previous

2

hearing.  Finally, it concluded that Olumuyiwa had not shown prima facie eligibility for relief.  Olumuyiwa petitions for review.[1]

## II.

Olumuyiwa's primary argument on review is that the BIA did not adequately address the evidence she presented in support of her motion to reopen.  We agree that the BIA's discussion of that evidence, in which it failed to mention any item in particular, leaves something to be desired.  See Zheng, 549 F.3d at 267-68.  The question ultimately before us, however, is whether the BIA abused its discretion in denying reopening.  We cannot say that it did.

Olumuyiwa's motion to reopen was untimely because she did not file it within ninety days of the BIA's previous decision.  See 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2).  Thus, to obtain reopening, she had to present material evidence of "changed country conditions arising in" Nigeria.  8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii).  The BIA held that Olumuyiwa's evidence does not qualify for several reasons.  We find one of them dispositive.

In its initial decision, the BIA held that, although Olumuyiwa had shown past

---

[1] We have jurisdiction pursuant to 8 U.S.C. § 1252.  We review the BIA's denial of reopening for abuse of discretion and may not disturb its ruling unless it is "'arbitrary, irrational, or contrary to law.'"  Zheng v. Att'y Gen., 549 F.3d 260, 264-65 (3d Cir. 2008) (citation omitted).  We review the BIA's underlying assessment of the record for substantial evidence and must uphold it unless "'any reasonable adjudicator would be compelled to conclude to the contrary.'"  Liu v. Att'y Gen., 555 F.3d 145, 148 (3d Cir. 2009) (quoting 8 U.S.C. § 1252(b)(4)(B)).

3

persecution, the Government rebutted the resultant presumption that she has a well-founded fear of persecution by showing that she could reasonably relocate within Nigeria, and to Lagos in particular. (Aug. 21, 2002 BIA Dec. at 2) (A.R. 173). In its present decision, the BIA held that Olumuyiwa had presented no evidence "challenging the Board's decision relating to [her] ability to relocate in Lagos" and that her evidence "does not refute the fact that relocation is possible." (Aug. 5, 2010 BIA Dec. at 1-2) (A.R. 3-4). Although its discussion of this issue is fairly cursory, it is adequate for us to review its ruling. See Toussaint v. Att'y Gen., 455 F.3d 409, 414-15 (3d Cir. 2006).

Olumuyiwa has not raised any persuasive challenge to that ruling. She does not cite any evidence calling it into question, and our own review of the record has revealed none.[2] Instead, she argues that the BIA erred by requiring her to show that she could not relocate because, in light of her past persecution, the burden is on the Government to prove otherwise. See 8 C.F.R. § 1208.13(b)(3)(ii). That argument misperceives the current procedural posture. Olumuyiwa is seeking reopening, so she must show that changed circumstances in Nigeria call the BIA's previous ruling into question. Her

---

[2] Some of Olumuyiwa's evidence reports a recent escalation of violence between Muslims and Christians in parts of Nigeria, primarily in the city of Jos near the country's center (A.R. 123-125, 141-44), but none of her evidence mentions any religious-based violence in Lagos. The only statement in the record arguably suggesting the potential for such violence is the statement in the 2009 International Religious Freedom Report that "[a]cute sectarian violence in the Middle Belt served to heighten tensions between religious groups even in parts of the country that did not experience the violence." (A.R. 143-44.) That isolated reference to "heighten[ed] tensions . . . in parts of the country" does not compel the conclusion that Olumuyiwa cannot safely relocate to Lagos.

4

evidence does not do so. She further argues that it is not safe for her to relocate to Lagos because her twin sister was killed there in 1996, in what she believes to be a case of mistaken identity, but she raised that argument in her underlying proceeding and the BIA rejected it. She cannot challenge the BIA's underlying ruling at this stage. See Camara v. Att'y Gen., 580 F.3d 196, 201 n.10 (3d Cir. 2009). Finally, she argues that the BIA erred by stating that it is "possible" for her to relocate to Lagos instead of considering whether it is "reasonable" for her to do so. See 8 C.F.R. § 1208.13(b)(1)(i)(B). Once again, however, the BIA was referring merely to the lack of evidence calling its previous ruling into question. It was not ruling on the issue in the first instance.

In sum, Olumuyiwa presented nothing requiring the BIA to revisit its previous ruling that the Government met its burden to prove that she can safely relocate to Lagos. That ruling remains dispositive of her claim. See id. Thus, the BIA did not abuse its discretion in concluding that Olumuyiwa failed to show changed country conditions that warranted reopening.[3]

Accordingly, we will deny the petition for review.

---

[3] Because Olumuyiwa did not show that changed country conditions warranted reopening, the BIA correctly held that she was not eligible to file a successive asylum application (as in fact she did not) on the basis of the change in her personal circumstances brought about by her conversion to Christianity. See Liu, 555 F.3d at 150. We note that the BIA previously held that both Christians and Muslims can safely relocate within Nigeria. (Aug. 21, 2002 BIA Dec. at 2) (A.R. 173). Olumuyiwa has not presented any evidence that country conditions have changed in that regard.