**IMG-018**                                                          **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1954
_____

XINWANG YANG,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A72-993-689)
Immigration Judge:  Honorable Charles M. Honeyman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 3, 2012

Before:  FUENTES, JORDAN AND VAN ANTWERPEN, Circuit Judges

(Opinion filed: January 11, 2012)
_____

OPINION
_____

PER CURIAM

Xinwang Yang petitions for review of an order of the Board of Immigration

Appeals ("BIA") denying his second motion to reopen.  For the reasons that follow, we

will deny the petition.

Yang is a citizen of the People's Republic of China who entered the United States in April 1995. Shortly thereafter, Yang was served with an order to show cause why he should not be deported pursuant to former Immigration and Nationality Act ("INA") § 241(a)(1)(B) [8 U.S.C. § 1251(a)(1)(B)]. He conceded deportability, and applied for asylum, withholding of deportation, and relief under the Convention Against Torture ("CAT"), claiming that he was persecuted under China's coercive family planning policies. The Immigration Judge ("IJ") denied relief, finding that Yang was not credible, in part because he testified that he had asked his family in China to prepare fraudulent documents. The BIA dismissed Yang's appeal in 2003, concluding that the adverse credibility determination was supported by substantial evidence. We denied Yang's petition for review. Yang v. Att'y Gen., 123 F. App'x 92 (3d Cir. Mar. 4, 2005). In 2006, Yang filed a motion to reopen, based primarily on alleged ineffective assistance of counsel. The BIA denied the motion as untimely, and we denied Yang's subsequent petition for review. See Yang v. Att'y Gen., 294 F. App'x 718 (3d Cir. Oct. 1, 2008).

In May 2010, Yang filed his second motion to reopen "based on changed country conditions, newly discovered and previously unavailable evidence[,] and changes of the case law and my personal circumstances." In particular, Yang claimed that he formally joined the China Democracy Party ("CDP") in 2007, that he "participated in many demonstrations in New York and Washington, D.C.," and that his "name and [his] pictures are published all over the Internet." According to Yang, Chinese authorities discovered his participation in the CDP and "went to my home in China and threatened my wife and my parents." Yang supported these assertions with a personal affidavit,

letters from his wife and a friend, and background material concerning the CDP and conditions in China.[1]

The BIA denied the motion to reopen as both time-barred and number-barred, holding that Yang "has not met his burden of establishing, with sufficiently reliable evidence, that there are material changed conditions so as to" create an exception to those limitations. 8 C.F.R. § 1003.2(c)(3)(ii). The Board noted that Yang's motion was "primarily based on his political activity here in the United States." With respect to conditions in China, the BIA concluded that Yang's evidence did not "show[] a material change in how members of pro-democracy groups are treated as compared with the time of [his] last hearing, which was in April 2002." Instead, the BIA held that Yang's "new evidence demonstrates a continuation of conditions for political activists . . . ." Referring to Yang's affidavit and the letters from his wife and friend, the Board concluded that Yang "has not adequately demonstrated that Chinese officials are harassing and threatening his family members based on his United States political activities, even assuming this would constitute material changed conditions arising in China." Finally, the BIA ruled that Yang had not shown an "exceptional situation" that would warrant sua sponte reopening. Yang filed a timely petition for review of the BIA's decision.

We have jurisdiction pursuant to INA § 242 [8 U.S.C. § 1252]. We review the

---

[1] In addition to seeking reopening, Yang argued that he should be permitted to file a successive asylum application under Immigration and Nationality Act ("INA") § 208(a)(2)(D) [8 U.S.C. § 1158(a)(2)(D)]. We have held, however, that an alien who has been ordered removed may not file an untimely or successive asylum application based on changed personal conditions, unless he can also show changed country conditions in his motion to reopen. Liu v. Att'y Gen., 555 F.3d 145, 150-51 (3d Cir.

denial of a motion to reopen for an abuse of discretion. Filja v. Gonzales, 447 F.3d 241, 251 (3d Cir. 2006). Under this standard, we may reverse the BIA's decision only if it is "arbitrary, irrational, or contrary to law." Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002).

An alien generally may file only one motion to reopen, and must file the motion with the BIA "no later than 90 days after the date on which the final administrative decision was rendered." 8 C.F.R. § 1003.2(c)(2). Yang's motion to reopen is clearly time- and number-barred. The time and number requirements do not apply to motions that rely on evidence of "changed country conditions," INA § 240(c)(7)(C)(ii) [8 U.S.C. § 1229a(c)(7)(C)(ii)], or "changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii). The term "previous hearing" in § 1003.2(c)(3)(ii) refers to the proceedings before the IJ. Filja, 447 F.3d at 252.

We agree with the BIA that Yang's CDP membership in the United States is a change in his personal circumstance, not a change in country conditions that would support reopening. See Liu, 555 F.3d at 150-51; see also Liu v. Holder, 560 F.3d 485, 492 (6th Cir. 2009) (holding that "membership and participation in the CDP and its activities in the United States . . . demonstrated a change in [Petitioner's] personal circumstances but did not demonstrate changed country conditions in China."). Yang does not appear to challenge this finding, but argues that he "met his burden to reopen

2009).

based on changes [in] country conditions and changes [in] his hometown since his last hearing in 2002 before the immigration court." We disagree.

At the time of Yang's previous hearing, the latest country conditions evidence in the record (from the 1995 Country Report) indicated that in China there "continued to be widespread and well-documented human rights abuses," that "challenges to [the Chinese government's] political authority are often dealt with harshly and arbitrarily," and that "Chinese leaders moved swiftly to cut off organized expression of protest or criticism . . . ."[2] In support of his motion to reopen, Yang submitted the State Department's 2008 Country Reports on Human Rights Practices. That Report stated that "[d]uring the year" China "increased detention and harassment of dissidents and petitioners." But, as the BIA properly concluded, "the document as a whole does not show a meaningful change in conditions since the 2002 hearing." Indeed, the Report stated that the Chinese "government *continued* to monitor, detain, and imprison current and former CDP members." (emphasis added). Therefore, we agree that the background evidence failed to demonstrate a material change in the treatment of members of pro-democracy political groups since the 2002 proceedings before the IJ.

---

[2] Although Yang's "previous hearing" occurred in 2002, he did not supply any background material from that time in his motion to reopen. He has now filed a motion to supplement the record with the 2002 State Department Country Report on Human Rights Practices in China and a "corrected translation" of a letter from Yang's friend. The Government opposes this motion, and has moved to strike portions of Yang's brief which rely on the non-record evidence. We will deny Yang's motion because our review is limited to the record that was before the agency when it issued the decision under review. See INA § 242(b)(4)(A) [8 U.S.C. § 1252(b)(4)(A)]. Therefore, we will not consider this evidence, or any arguments which rely on it. Wong v. Att'y Gen., 539 F.3d 225, 234 n.4 (3d Cir. 2008).

We also conclude that Yang's affidavit and the letters from his wife and friend do not sufficiently establish a change in country conditions. The Board questioned the authenticity of this evidence. For instance, the BIA noted that Yang, who asserted that he has lived in Florida since March 2006, failed to explain in his affidavit why his political activities took place in New York and Washington, D.C. In addition, the Board "decline[d] to give significant weight to the letter" from Yang's wife, in part because it "came from an interested witness who is not subject to cross-examination" and failed to indicate when the Chinese officials came to her house. The BIA also questioned the authenticity of a letter signed by someone identifying himself as Yang's "[f]riend," which asked, "[h]ow are you doing *brother*," and stated that the "government and the Board Security sen[t] a group of people to *our house*."[3] (emphasis added).

Yang argues that these discrepancies are the result of translation errors, incorrect assumptions about the meaning of the term "brother," and misperceptions about his ability to travel out of state to participate in political activities. Even accepting the authenticity of this evidence, however, we conclude that the BIA properly determined

_____

[3] The Board also noted that it had "considered [Yang's] . . . prior admissions concerning his attempts to secure false documents to support an asylum claim." Yang argues that the IJ's prior adverse credibility finding is not relevant to the authenticity of the documents he submitted in support of his motion to reopen. See Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004) (stating that an IJ "must justify each adverse credibility finding with statements or record evidence specifically related to the issue under consideration."). Although "one adverse credibility finding [does not] beget another," id., the BIA did not run afoul of this rule here. Citing Guo, the Board stated that it "agree[d] with [Yang] that . . . a prior adverse credibility finding is not sufficient to justify denial of all subsequent applications . . . ." Moreover, to the extent that the BIA relied on Yang's prior attempt to obtain fraudulent documents, that was merely one of several factors leading the Board to

that it failed to demonstrate a material change in China's treatment of CDP members. The affidavit and letters establish that Chinese government officials went to Yang's house and his daughter's school, accused him of participating in pro-democracy activities in the United States, and threatened to imprison him if he returned to China. At bottom, however, the actions of the Chinese government officials do not sufficiently establish the type of "changed country conditions" contemplated by INA § 240(c)(7)(C)(ii).

In sum, because the record does not compel the conclusion that conditions facing CDP members who return to China had changed materially since the time of Yang's 2002 proceedings before the IJ, the BIA did not abuse its discretion in denying the motion to reopen. Furthermore, the Board's decision not to sua sponte reopen the proceedings is unreviewable. Cruz v. Att'y Gen., 452 F.3d 240, 249 (3d Cir. 2006). Accordingly, we will deny the petition for review. Yang's motion to supplement the record and the Government's motion to strike are denied.

---

question the authenticity of Yang's affidavit and the letters.