**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3814
_____

XING BIN LI,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No.:  A077-027-160)
Immigration Judge:  Honorable Alberto J. Riefkohl

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 30, 2014

Before: RENDELL, GREENAWAY, JR., and ALDISERT, Circuit Judges

(Opinion filed:  April 30, 2014)
_____

O P I N I O N
_____

PER CURIAM

    Xing Bin Li petitions for review of a decision of the Board of Immigration

Appeals (BIA).  For the reasons below, we will deny the petition for review.

Li, a native of China, entered the United States in May 1998. He was charged as removable as an alien present in the United States who had not been admitted or paroled. Li applied for asylum and withholding of removal, and relief under the Convention Against Torture (CAT). In April 1999, an Immigration Judge (IJ) found Li removable and denied his applications for relief. The BIA summarily dismissed his appeal in March 2002 for failure to file a brief. Over eleven years later in July 2013, Li filed a motion to reopen alleging ineffective assistance of counsel and changed country conditions. The BIA denied the motion to reopen, and Li filed a petition for review.

We have jurisdiction under 8 U.S.C. § 1252. We review the denial of a motion to reopen for abuse of discretion. Filja v. Gonzales, 447 F.3d 241, 251 (3d Cir. 2006). Under this standard, we may reverse the BIA's decision only if it is "arbitrary, irrational, or contrary to law." Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002). An alien generally may file only one motion to reopen, and must file the motion with the BIA "no later than 90 days after the date on which the final administrative decision was rendered." 8 C.F.R. § 1003.2(c)(2).

Li argues that he was entitled to reopen his proceedings due to ineffective assistance of counsel because he was represented by the Porges Law Firm, and the firm's lawyers did not file a timely brief before the BIA. He submitted an opinion by the New York Supreme Court, Appellate Division in which it disbarred Robert Porges. The court stated that Porges engaged in racketeering by preparing and submitting false applications for asylum for Chinese aliens between 1993 and September 2000. A.R. at 28-29. The BIA determined that Li had not complied with the requirements of Matter of Lozada, 19

2

I. & N. Dec. 637 (BIA 1988), for establishing an ineffective assistance claim and had not shown due diligence in raising his claim.

Li argues that he should not have been required to comply with Lozada because it is common knowledge who Porges is and what crimes he has committed. According to the electronic docket for the Southern District of New York, Porges was indicted in September 2000, pleaded guilty in February 2002 to racketeering and tax fraud conspiracy, and was sentenced to 97 months in prison. Because Porges has been disbarred, Li contends that he was precluded from filing a complaint against him. However, before the IJ, Li was represented by several attorneys from the Porges Law Firm: Estella Viglianco, Victor Ocampo, Charles Chen, Ed Fu, and Gen Chow. At one brief bond hearing, Li was represented by Robert Porges.

In a motion to file the brief before the BIA out of time, an attorney named Victoria Calle represented that the Porges Law Firm was retained by Li on the date the appellate brief was due. (Li had filed a pro se notice of appeal.) She noted that Li had been informed that the firm might not be able to submit a brief due to its lateness and Li agreed not to hold counsel accountable. A.R. at 92. Li has not shown that Robert Porges was involved in the late filing of the brief. (It appears that Li himself is responsible for the late filing.) Thus, Porges's conviction does not excuse Li from fulfilling the Lozada requirements. Moreover, as noted by the BIA, Li did not show due diligence in waiting over eleven years after the dismissal of his appeal to file his motion to reopen. His allegations of ineffective assistance of counsel thus do not entitle him to file an untimely motion to reopen.

3

<u>Changed Country Conditions</u>

There is an exception to the time and number requirements for motions to reopen that rely on material evidence of changed circumstances arising in the country of nationality. 8 C.F.R. § 1003.2(c)(3). Li argues that circumstances have changed materially for Christians in China and supporters of Tibet.

With his motion to reopen, Li submitted the <u>2012 Country Report on Human Rights Practices for China</u>. A.R. at 55-82. He did not discuss the Report in any detail or quote from it. A.R. at 11-19. In his brief, he now quotes at length from the <u>2012 Report of the Congressional-Executive Commission on China</u> and the <u>2012 Department of State International Religious Freedom Report for China</u>. However, neither of these reports is in the administrative record. We may decide a petition for review based only on the administrative record. <u>See</u> 8 U.S.C. § 1252(b)(4)(A). Li asserts in a footnote that the Court can take judicial notice of changed conditions in asylum cases. However, the two cases he cites involved the fall of Saddam Hussein's regime in Iraq and a coup in Fiji. Li does not point to any such dramatic event in China that would affect the treatment of Christians. Moreover, we have noted that we do not take judicial notice of new country developments. <u>Kamara v. Att'y Gen.</u>, 420 F.3d 202, 218 (3d Cir. 2005). Furthermore, Li has not shown that these 2012 reports were not available at the time he filed his motion to reopen in July 2013.

Li contends that the BIA selectively considered the evidence relating to his political opinion claim. Li argued in his motion to reopen that there are changed circumstances based on his pro-Tibet activities in the United States. He also contended

4

that the head of a village committee in China purportedly issued a notice and ordered Li to report to the committee's office due to his involvement in "illegal religious and political activities." A.R. at 45. The BIA stated that Li's documents were unreliable and insufficient to support reopening. It also stated that Li had offered no evidence to support his claim that he participated in pro-Tibet activities in the United States. It concluded that he had not shown a change in the conditions in China with regard to returnees who are active in pro-Tibet activities in the United States. A.R. at 5. We agree.

Li appears to argue that the BIA failed to consider the letter from his uncle and the issuance of a notice by a village committee as evidence of changed circumstances in China for those who support Tibet. He also contends that the BIA erred in discounting those documents as unauthenticated. The BIA gave Li's documents little weight due to their unreliability. The BIA observed that the village committee notice was handwritten and had not been authenticated in any manner. It noted that the letter from Li's uncle regarding his arrest was unsworn, created for the litigation, not subject to cross-examination, and uncorroborated by any police report, medical records, or any other documents. The BIA did not err in the weight given to the documentary evidence.

Even accepting the village committee notice as authentic, Li must still show that his claim is based on changed country conditions in China for supporters of Tibet and not just a change in his personal circumstances based on his activities in the United States. Aliens may not manufacture new asylum claims by changing their personal circumstances. See Liu v. Att'y Gen., 555 F.3d 145, 151 (3d Cir. 2009).

5

Li has not shown that the BIA abused its discretion in denying his motion to reopen. Accordingly, we will deny the petition for review.