**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4029
_____

LING XIN REN,

                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A077-293-692)
Immigration Judge:  Charles M. Honeyman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 24, 2011

Before:  AMBRO, GREENAWAY, JR. and GREENBERG, Circuit Judges

(Opinion filed: January 17, 2012)
_____

OPINION
_____

PER CURIAM

 Ling Xin Ren[1], a native and citizen of Fujian Province in China, was placed in

---

  [1]  The record suggests that Ren's name is actually "Liang Xing Ren."  (AR 199,
496, 571.)  Nevertheless, for consistency's sake we will use the iteration of Ren's name
that appears on our docket and in the parties' briefs.

removal proceedings after unlawfully entering the United States in 1999. The Board of Immigration Appeals (BIA) upheld the Immigration Judge's denial of asylum and related relief, ordered that Ren be removed to China, and denied Ren's two subsequent motions to reopen the proceedings. Ren has now filed a petition for review of the BIA's September 14, 2010 decision denying his second motion to reopen. Finding no abuse of discretion by the BIA, we will deny the petition for review.

## I.

The 'final' order of removal in this case was issued on January 30, 2003. (AR 175.) Since that time, Ren's personal circumstances apparently changed: he married in July 2004, his wife became a naturalized United States citizen in December 2004, and the pair gave birth to a son in January 2005. (AR 46.) Ren's wife filed an I-130 visa petition on his behalf in January 2010, and Ren filed an I-485 application to adjust status in conjunction with his wife's petition. According to Ren, both applications are pending.

Ren's alleged changed personal circumstances, in addition to purported changes in country conditions in China, prompted him in February 2010, to file a motion to reopen removal proceedings—his second—pursuant to 8 C.F.R. § 1003.2(a), (c). In support of the motion, Ren claimed that Chinese authorities were "seeking to persecute men who have fathered one child in the United States" (AR 32), and would forcibly sterilize him on his return. He further asserted that the authorities would subject him to "imprisonment, fine, and other tortures [sic]" (AR 45), because he had left the country

2

illegally.  Ren submitted his affidavit and I-94 departure record, his son's birth certificate, and filing receipts for the pending visa petition and application for adjustment of status. As evidence of changed country conditions, he submitted the following documents:  the 2004 Aird affidavit; excerpts from the 2007 State Department Country Profile on China ("2007 Country Report") (attaching the 2002 "Population and Family Planning Regulations of Fujian Province," and the 2006 letter from the Fujian Province Population and Family Planning Commission to the U.S. Consulate General in Guangzhou); excerpts from the 2008 Annual Report of the Congressional-Executive Commission on China (the "2008 CEC Report"); responses by the Canadian Immigration and Refugee Board to information requests about China; and three media articles from 2005 and 2007.[2]

In its September 14, 2010 decision, the BIA denied Ren's second motion to reopen as time- and number-barred.  (AR 3.)  And it found that Ren had not shown changed country conditions in China sufficient to warrant relief from the time and number limitations for motions to reopen.  The BIA noted that it had already considered and addressed the Aird affidavit, the 2007 Country Report, and several of the media reports/articles in Matter of H-L-H- & Z-Y-Z-, 25 I. & N. Dec. 209 (BIA 2010), Matter of S-Y-G-, 24 I. & N. Dec. 247 (BIA 2007), Matter of J-W-S-, 24 I. & N. Dec. 185 (BIA 2007), and Matter of C-C-, 23 I. & N. Dec. 899 (BIA 2006).  (AR 4.)  Citing the 2007 Country Report, the BIA found that "[t]he evidence reflects that social compensation

---

[2]  He also cited the web address for the State Department Country Report on Human Rights Practices in China issued in 2008, but did not attach a copy.  (AR 25.)

fees, job loss or demotion, loss of promotion opportunity, expulsion from the party, destruction of property, and other administrative punishments are used to enforce family planning policy, and that China regards a child of Chinese nationals who have not permanently settled in another country to be a Chinese national." (AR 4.)

The BIA held that the evidence in Ren's case "does not demonstrate that the applicant will face forcible sterilization in China based on the birth of one child in the United States and a desire to have more children." (AR 4.) The BIA also ruled that Ren failed to show that he would be subjected to economic harm amounting to persecution. (AR 4.)[3] Accordingly, the BIA denied Ren's motion and declined to reopen sua sponte. (AR 5.) Ren filed this timely petition for review.

## II.

We have jurisdiction under 8 U.S.C. § 1252. Kucana v. Holder, --- U.S. ---, 130 S. Ct. 827, 840 (2010). We review for abuse of discretion the BIA's denial of a motion to reopen. See Pllumi v. Att'y Gen., 642 F.3d 155, 158 (3d Cir. 2011). "We give the BIA's decision broad deference and generally do not disturb it unless it is 'arbitrary, irrational, or contrary to law.'" Id. (citation omitted).

---

[3] Additionally, the BIA determined that Ren failed to provide evidence of his marriage to a United States citizen and failed to submit his application for adjustment of status and/or a new asylum application as required by 8 C.F.R. § 1003.2(c)(1). (AR 4.)

4

III.

In general, an alien may file only one motion to reopen, and he must file it with the BIA "no later than 90 days after the date on which the final administrative decision was rendered." 8 C.F.R. §1003.2(c)(2)). These time and number limitations are surmounted, however, when a motion to reopen removal proceedings relies on "changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii)). There is no question that the evidence submitted to the BIA by Ren was unavailable during his original removal proceedings. The BIA determined, however, that the evidence was not "material" to Ren's claim that he fears persecution on account of a prospective violation of China's coercive family planning policy.

A.

Ren's central claim in his opening brief is that "the BIA abused its discretion when it ignored petitioner's substantial evidence in deciding that petitioner failed to present evidence to establish changed country conditions." Ren does not specify which pieces of evidence were ignored by the BIA, but we observe that the BIA did not explicitly discuss the excerpts from the 2008 CEC Report, located on pages 123 through 134 of the Administrative Record. Nor is there any discussion of the 2008 CEC Report in <u>Matter of</u>

5

<u>H-L-H- & Z-Y-Z-</u>, 25 I. & N. Dec. 209 (BIA 2010), the only post- January 1, 2008 case the BIA cited in denying Ren's motion to reopen.[4]

Ren cites our decision in <u>Zheng v. Attorney General</u>, 549 F.3d 260 (3d Cir. 2008), where we quoted approvingly the Second Circuit's statements that "'[immigration judges] and the BIA have a duty to explicitly consider any country conditions evidence submitted by an applicant that materially bears on his claim,' and '[a] similar, if not greater, duty arises in the context of motions to reopen based on changed country conditions.'" <u>Id.</u> at 268 (quoting <u>Guo v. Gonzales</u>, 463 F.3d 109, 115 (2d Cir. 2006)). We remanded to the BIA in <u>Zheng</u>, because it "did little more than quote passages from its earlier decision in [Matter of] J-W-S- without identifying—let alone discussing—the various statements contained in the record before it that Zheng submitted in support of his motion to reopen." <u>Id.</u>

While not as comprehensive as the decision of the BIA in <u>Liu v. Attorney General</u>, 555 F.3d 145 (3d Cir. 2009)—from which we quoted at length in order to "demonstrate the type of findings that are sufficient under <u>Zheng</u>," <u>id.</u> at 149—the BIA's September

---

[4] The 2008 CEC Report included findings that the "Chinese government announced that parents who lost an only child in the May 2008 Sichuan earthquake would be permitted to have another child if they applied for a government-issued certificate" (AR 125-26), and that "urban families who violate the one-child rule risk having officials apply negative marks on financial credit records." (AR 126.) The report states that "China's population planning policies in both their nature and implementation constitute human rights violations according to international standards. During 2008, the central government ruled out change to the policy for at least a decade. . . . Violators of the policy are routinely punished with exorbitant fines, and in some cases, subjected to forced sterilization, forced abortion, arbitrary detention, and torture." (AR 127.)

14, 2010 decision in Ren's case is hardly the pro forma type we rejected in Zheng itself. As in Liu, the BIA in Ren's case laid out all of Ren's arguments and identified all of the evidence that Ren had submitted, including, inter alia, the 2008 CEC Report. See Liu, 555 F.3d at 149 (presenting the petitioner's arguments and noting the petitioner's affidavit and a CEC Report from 2006 without further discussion of those documents). The BIA also made its own findings based on the 2007 Country Report, namely that China had no national policy of physical coercion in the form of forced sterilizations or abortions.

Although it did not engage in any significant discussion of the harsh administrative and other punitive treatment Chinese officials in certain villages have imposed on violators of the one child policy, the BIA cited previous cases in which it had addressed the 2007 Country Report's statements about such measures.[5] See Matter of H-L-H- & Z-Y-Z-, 25 I. & N. Dec. at 214 ("Although acknowledging that there were 'reportedly' forced sterilizations in Fujian in 2006, the State Department observes that Consulate General officials visiting Fujian have found that coercion through public and other pressure has been used, but they did not find any cases of physical force employed in connection with abortion or sterilization"); Matter of J-W-S-, 24 I. & N. Dec. at 190

---

[5] Thus, even if the BIA did err in failing to explicitly discuss the 2008 CEC Report, the error was harmless; the excerpts from that report are largely cumulative of the 2007 Country Report and, in any event, irrelevant to Ren's claim, since he has only one child. See Yuan v. Att'y Gen., 642 F.3d 420, 427 (3d Cir. 2011) ("we will view an error as harmless and not necessitating a remand to the BIA when it is highly probable that the error did not affect the outcome of the case").

7

(quoting from the 2007 Country Report and stating, in pertinent part, that "[i]n the case of families that already had two children, one parent was often pressured to undergo sterilization. These [administrative and other] penalties left women with little practical choice but to undergo abortion or sterilization."). The BIA's prior findings provide a sufficient basis for its holdings in the September 14, 2010 decision. And while that decision is not a mirror image of the one in Liu, we conclude that it is sufficient to satisfy the standard set forth in Zheng and, furthermore, that the BIA did not abuse its discretion in denying Ren's motion to reopen.

B.

Ren also claims that his petition for review should be granted because "an alien is entitled to a continuance of removal proceedings against him while a 'prima facie approvable' I-130 immigrant visa petition and I-485 application for adjustment of status are pending." In the context of this petition for review, Ren's claim makes little sense; we are not reviewing the denial of a motion for continuance. Cf. Khan v. Att'y Gen., 448 F.3d 226, 234 n.7 (3d Cir. 2006) (noting BIA precedent holding that an immigration judge should generally grant an alien's request for a continuance where that alien has submitted a prima facie approvable visa petition). In addition, we have found no law supporting the proposition that the BIA must reopen removal proceedings any time, in Ren's words, a "prima facie approvable I-130 immigrant visa petition and I-485 application for adjustment of status are pending." To the extent Ren is actually attempting to challenge the BIA's refusal to reopen proceedings sua sponte, we lack

8

jurisdiction to review that determination.  <u>See</u> <u>Calle-Vujiles v. Ashcroft</u>, 320 F.3d 472, 475 (3d Cir. 2003).

IV.

Accordingly, for the reasons given in this opinion, the petition for review will be denied.